UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LAMONT AUSTIN,

                Plaintiff,

-against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[*]

                Defendant.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-1470 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Lamont Austin brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the decision of the Social Security Administration ("SSA") that he is not disabled and therefore not entitled to Social Security Disability and Supplemental Security Income ("SSI") benefits. Austin argues that the SSA made four errors in denying his application for benefits: (1) erroneously determining that Austin did not have any impairment which met or equaled the Listing of Impairments; (2) improperly evaluating the opinions of Austin's treating physicians; (3) failing to properly evaluate Austin's credibility; and (4) improperly considering Austin's age under the Medical-Vocational Guidelines. Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), has filed a motion, and Austin has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is DENIED, Austin's motion is GRANTED, and this case is REMANDED to the SSA for further proceedings.

---

[*] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner of Social Security Carolyn W. Colvin is hereby substituted as Defendant. The Clerk of Court is respectfully directed to amend the caption accordingly.

1

# I. BACKGROUND

## A. Factual Background

Austin was born on September 21, 1960. (Admin. Rec. (Dkt. 25) ("Rec.") at 26.) He has an eleventh grade education. (Id. at 27.) He has previously worked as an ambulance driver and as a truck driver. (Id.) Austin was a truck driver for Whitson's Food Service for eight years, a position which included loading and unloading packages. He stopped driving for Whitson's in 2007 because of an alleged inability to continue performing the work. After that, he had been employed as an ambulette driver. (Id.) On November 2, 2009, Austin stopped driving the ambulette because of the injuries described below. (Id. at 28.)

### 1. Dr. Reich's Findings

Dr. David R. Reich is a chiropractor who began seeing Austin in 2006 for a job-related injury and continued to treat him in 2009 and 2010 for complaints of back pain and intermittent muscle spasm. (Id. at 203.) In a report dated November 16, 2009, Dr. Reich noted that Austin had tenderness affecting his pelvis, his L5 vertebra, and his lumbar vertebrae. Dr. Reich also noted that Austin had limited straight leg raising and restricted range of motion. (Id. at 205.) Based on Austin's extremity pain and the diminution of his Achilles reflex, Dr. Reich diagnosed Austin with chronic strain/sprain of his vertebral column with associated disc herniation/bulge; spinal stenosis intervertebral foramen compromise; and possible radiculopathy in his left-mid torso. (Id.) Dr. Reich concluded that Austin was incapable of returning to work. (Id.) On November 16, 2009, Dr. Reich noted that Austin's responses to an Oswesty Law Back Pain Questionnaire indicated a moderate to marked degree of disability. (Id.) And during a January 4, 2010, examination, Dr. Reich reaffirmed his conclusions, noting that the Oswesty Law survey now indicated a severe degree of disability. (Id. at 291.)

### 2. Dr. Diwan's Findings

Dr. Laxmidhar Diwan was an orthopedist at Queens Arthroscopy and Sports Medicine. (Id. at 294-95.) He first saw Austin on December 3, 2009, upon referral from Dr. Reich. (See id. at 294.) He treated Austin frequently in 2009 and 2010 for complaints of pain and limitation of motion of his low back and radiation pain to his lower right leg. (Id.) In a report dated December 17, 2009, Dr. Diwan indicated that Austin suffered from lumbar disc displacement, a herniated disc, muscle spasms in the trapezins muscles, pain and tenderness, palpable muscle spasm, sensation, and muscle atrophy, as a result of "causes on the job." (Id. at 325-28.) He opined that Austin could not return to work because he was totally disabled. (Id. at 328.) On March 16, 2010, Dr. Diwan further specified that total disability was due to pain and limited range of motion. (Id. at 334-37.) On September 1, 2010, Dr. Diwan noted that in addition to these causes of his total disability, Austin also suffered from "severe spasms, positive orthopedic tests for lumbar nerve tension, marked reduction of lumbar range of motion, impair[ed] ambulation, [and] the inability to sit/stand, [or] walk for prolonged periods." (Id. at 357.)

### 3. Dr. Nandakumar's Findings

On December 29, 2009, Dr. Thambiraja Nandakumar, a neurologist, conducted a consultative examination of Austin upon Dr. Reich's referral. (Id. at 225.) While Dr. Nandakumar advised that Austin should not sit or stand for long periods of time or perform heavy lifting, pushing, or pulling, he cleared Austin for light work. (Id. at 225-27.) In his report, Dr. Nandakumar found that Austin had tenderness of the cervical spine and lumbar region, decreased range of motion of the cervical and lumbar spine, positive straight leg raising, weakness of dorsiflexion of the left foot, sensory loss, and a limping gait. (Id.) During a February 1, 2010, physical examination, however, Dr. Nandakumar reported that Austin's motor

power was a "five" on a one-to-five scale and sensory reflexes and gait were normal. (Id. at 214-15.) Dr. Nandakumar reaffirmed that Austin be cleared for light work. (Id.) In a physical residual functional capacity assessment on March 2, 2010, Dr. Nandakumar reported that Austin was able to lift ten pounds, stand or walk two hours in an eight hour work day, and occasionally climb stairs, ladders, ropes, and scaffolds. (Id. at 260-65.) While Dr. Nandakumar acknowledged Austin's claims of back pain and aggravation during lifting, standing, walking, sitting, stair climbing, kneeling, and squatting, he questioned the severity of Austin's complaints. (Id. at 264.)

### 4. Dr. Han's Findings

Dr. J.H. Han of Queens Medical Associates treated Austin on July 28, 2010, for a pain management visit upon Dr. Diwan's referral, and indicated that Austin was totally disabled. (Id. at 269.) In his report, Dr. Han noted that Austin had suffered from persistent low back and neck pain for the past four to five years, and that he suffered from lumbar radiculopathy, a herniated lumbar disc, and myalgia. (Id. at 269-72.) Dr. Han's physical examination revealed lumbar spine flexion of seventy degrees with low back pain, and extension of twenty-six degrees with low back pain. (Id.) In addition, Dr. Han found tenderness of the lumbar parvertebral, and positive leg raising, lesiques test, and bowstring tests. (Id.)

### 5. Dr. Goldman's Findings

Dr. Donald Goldman, a medical expert appointed by the SSA, reviewed Austin's records and listened to his testimony. Dr. Goldman opined that Austin could lift twenty-five pounds occasionally and fifteen to twenty pounds frequently. (Id. at 59.) He also determined that Austin had no limitations in his capacity to climb stairs, kneel, squat, or bend. (Id.) Dr. Goldman found

Goldman found that Austin could sit for at least six hours per day and stand/walk for four hours per day. (Id. at 61.)

Dr. Goldman further stated that an annular tear—from which Austin allegedly suffered—is frequently self-limiting, and can heal with treatment or by itself. (Id. at 33.) Dr. Goldman also opined that an annular tear may cause pain, but it does not cause radiating pain. (Id. at 35.) He testified that Dr. Diwan's finding that Austin suffered from a "1+ electrical abnormality" is the mildest positive EMG finding, and that it is not a "true positive finding" because such a finding suggests only irritation and does not correlate with any of the positive MRI findings. (Id. at 37.) In other words, he discounted the severity of Austin's injuries.

**B.      Procedural History**

On January 7, 2010, Austin filed an application for Social Security Disability and SSI benefits claiming that he had been disabled since November 2, 2009, due to degenerative joint disease and radiculopathy spondylosis. (Compl. (Dkt. 1).) He alleged that his impairments prevented him from sitting, standing, or walking for long periods of time, and that he suffered from lower back pain, right side inguinal pain, intermittent muscle spasms, and pain affecting the left posterior and mid-posterior calf. (Rec. at 291.) The SSA denied his application on March 4, 2010. (Id. at 10.)

Austin requested a hearing on his application before an Administrative Law Judge ("ALJ"); ALJ David Nisnewitz held a hearing on October 6, 2010. (Id.) Austin testified at the hearing. (Id.) On October 26, 2010, the ALJ issued a written decision concluding that Austin was not disabled within the meaning of the Social Security Act. (Id. at 10-20.) Austin requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Compl. at 1.) On March

5

5, 2012, the Appeals Council refused to reconsider the ALJ's conclusion, rendering this the SSA's final decision. (Rec. at 1-3.)

On March 23, 2012, Austin, represented by counsel, filed the instant Complaint seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the SSA's decision that he was not disabled and therefore not entitled to Social Security Disability and SSI benefits. (Compl.) Austin and the Commissioner have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def. Mem. (Dkt. 22); Pl. Mem. (Dkt. 17).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotation marks omitted). A court is required to "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). In addition to the pleadings, the court may consider "statements or documents incorporated into the complaint by reference . . . and

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks omitted). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) the findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that

requires the Commissioner to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll, 705 F.2d at 642). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. (citing Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Shaw, 221 F.3d at 134). That duty is "heightened" when the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

Austin argues that the ALJ erred at steps three, four, and five in concluding that he was not disabled under the Social Security Act.

At step three, Austin contends that the ALJ erred in determining that he did not have any impairment which met or equaled the Listing of Impairments. (Pl. Mem. at 8.) At step four, Austin argues that the ALJ committed two errors in his determination of Austin's residual functional capacity: that the ALJ failed to properly (1) evaluate the opinions of Austin's treating physicians, Dr. Diwan and Dr. Reich; and (2) assess Austin's credibility. (Id. at 9.) And at step five, Austin claims that the ALJ improperly considered his age in utilizing the Medical-Vocational Guidelines to find Austin not disabled.

At step three, the ALJ correctly determined that Austin's disability did not constitute a listed impairment set forth in the regulations. And at step five, the ALJ properly considered Austin's age in applying the Medical-Vocational Guidelines. However, because the ALJ provided nothing close to "good reasons" for the lack of weight he gave to the opinions of Austin's treating physicians, the court must remand this case for a proper evaluation of their findings.

### A.   Listing of Impairments

Austin argues that the ALJ erred at step three in determining that Austin's disability did not constitute a listed impairment, specifically, a disorder of the spine under § 1.04A of Appendix 1 to the Code of Federal Regulations (the so-called "Listing of Impairments"). (Pl. Mem. at 8.) He is incorrect.

Section 1.04A defines a disorder of the spine as a "herniated nucleus pulposus"—i.e., a herniated disc "resulting in compromise of a nerve root . . . or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and spine)." 20 C.F.R. pt. 404, Subpt. P, App'x 1 § 1.04A. It is a plaintiff's burden to demonstrate that his disability met "all of the specified medical criteria" of a spinal disorder. Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

Here, substantial evidence supports the ALJ's conclusion that Austin did not carry his burden as to the definitional criteria of § 1.04. While an MRI conducted on March 12, 2009, showed a disc bulge with central herniation at the L4-L vertebrae, it did not show any substantial effect on the exiting nerve roots, indicating that there was no nerve root compression as required

by § 1.04A. (See Rec. at 250.) Similarly, although studies revealed evidence of left S1 radiculopathy, this finding did not correlate with the MRI results, which at L5-S1 showed no bulge, herniation, spinal stenosis, or foraminal narrowing. (Id. at 36-37, 250.) Therefore, the ALJ correctly determined that the definitional criteria of § 1.04 had not been met.

Even if Austin had demonstrated nerve root compression, he failed to prove the existence of other specified medical criteria required by § 1.04A. See 20 C.F.R. pt. 404, Subpt. P, App'x 1 § 1.04A. The medical evidence does not reflect motor loss as required by § 1.04A. (See id.) Despite evidence of marked lumbar paraspinal muscle hypertonia along the spine, Austin demonstrated full motor power and normal tone at all times after his alleged disability began. Furthermore, there were no findings supporting muscle atrophy. (Rec. at 55, 59). Additionally, although the record reflected findings of positive straight leg raising, testing was not conducted in both the sitting and supine position as required by § 1.04A. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04A.

While the ALJ could have been more specific in describing the reasons for his determination that Austin's condition did not satisfy a listed impairment, the referenced medical evidence is sufficient to affirm this portion of the challenged judgment. See Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (holding that "the absence of an express rationale does not prevent us from upholding the ALJ's determination . . . [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence"); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Accordingly, the criteria for § 1.04A of the Listing of Impairments were not met, and the ALJ did not err at step three.

## B. Evaluation of Austin's Treating Physicians

Austin argues that the ALJ failed to give the appropriate weight to the opinions of treating physicians Dr. Diwan and Dr. Reich. (Pl. Mem. at 8-9.) According to Austin, the ALJ failed to adequately explain why the opinions of these treating physicians were rejected. (Id.) He is correct.

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must assess several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination

and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While the ALJ need not mechanically recite each of these factors, it must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Here, the ALJ found that Dr. Diwan's ultimate opinion that Austin was totally disabled was inconsistent with his own negative neurological test results, and therefore the ALJ concluded that Dr. Diwan's opinion that Austin is totally disabled should not be given any weight. The ALJ also determined that Dr. Reich's opinion that Austin could not return to work was contradicted by the findings of Dr. Diwan, Dr. Nandakumar, and the assessment of Dr. Goldman. The ALJ concluded that Dr. Reich's opinion that Austin could not return to work should also be given zero weight.

To determine whether the ALJ properly evaluated Dr. Diwan and Dr. Reich's opinion, the court must first decide whether their opinions are entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting the opinions of Dr. Diwan and Dr. Reich, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2).

1. Controlling Weight

As the ALJ properly determined, Dr. Diwan's opinion as to Austin's total disability is not

13

entitled to controlling weight. The ALJ correctly concluded that it is inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133. For instance, Dr. Nandakumar's finding that Austin was capable of light work and standing or walking for two hours contradict Dr. Diwan's opinion of total disability. Additionally, as the ALJ noted, Dr. Goldman's opinion was consistent with a residual functional capacity for light work, further contradicting Dr. Diwan's opinion. (See Rec. at 18.)

Similarly, Dr. Reich's opinion as to Austin's inability to return to work is not entitled to controlling weight because it is inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133. Dr. Nandakumar's findings that Austin was capable of light work and standing or walking for two hours contradict Dr. Reich's opinion that Austin was unable to return to work because he could not sit, walk, or stand for long periods due to groin pain and lower back pain affecting his upper adductor muscles. (See Rec. at 260-65, 291.) Furthermore, as the ALJ noted, Dr. Nandakumar and Dr. Goldman both opined that Austin could return to work. (Id. at 18.)

Thus, substantial evidence conflicts with the opinions of Dr. Reich and Dr. Diwan. Therefore, the ALJ properly decided not to give their opinions controlling weight. Accordingly, the court now examines whether the ALJ gave "good reasons" to disregard their opinions entirely.

    2.    Good Reasons

As neither the opinion of Dr. Reich nor Dr. Diwan is entitled to controlling weight, the court must examine whether the ALJ, who discounted the opinions entirely, provided "good reasons" for doing so based on the factors set forth in the regulations. See Halloran, 362 F.3d at 33. Inconsistency with other evidence in the record can only resolve the "controlling weight"

14

issue and, standing alone, cannot constitute "good reasons." See McLean v. Astrue, No. 08-CV-4989 (NGG), 2012 WL 1886774, at *7 (E.D.N.Y. May 23, 2012) (stating that inconsistency with other evidence in the record "relates only to the determination of whether [a treating physician's] opinion is entitled to controlling weight and cannot in itself supply the 'good reasons' for discounting that opinion"). Furthermore, the court may remand where there is a reasonable basis to doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

a. *ALJ's Consideration of Dr. Diwan's Opinion*

The ALJ failed to fully consider the substance of the relevant factors discussed above in his decision not to accord any weight to Dr. Diwan's opinion. Dr. Diwan frequently examined and treated Austin in 2009 and 2010. (See id. at 294-95, 331-32, 334-37, 347-48, 350-51, 353-54, 356-57.) While the ALJ noted occasions where Dr. Diwan examined Austin, he failed to meaningfully consider the extent of Austin's lengthy treatment with Dr. Diwan in his assessment of that doctor's opinion. (See id. at 14-15.)

Furthermore, the ALJ stated that Dr. Diwan's opinion that Austin is totally disabled is "not consistent with [Dr. Diwan's] negative neurological findings, Dr. Nandakumar's opinion that the claimant could work, the medical expert's assessment, and the claimant's activities." (Id. at 18.) However, as the court held in Pogozelski, a treating physician's divergence from other evidence in the record does not necessitate the wholesale disregard that doctor's opinion. See Pogozelski, 2004 WL 1146059, at *16; see also McLean, 2012 WL 1886774, at *7. It is still incumbent on the ALJ to consider—at least in substance—other relevant factors in his assessment.

15

In addition, the ALJ also failed to discuss why he attributed more weight to the findings of Dr. Goldman, a non-treating physician who did not personally examine Austin, over the findings of Dr. Diwan, when more weight is generally placed on the opinion of doctor who has personally examined the Plaintiff. (See id. at 17-8.) See also 20 C.F.R. § 404.1527(c)(2). Moreover, the ALJ also failed to address or even acknowledge numerous pieces of other evidence, including the findings of Dr. Han and Dr. Reich, which support Dr. Diwan's finding of total disability. (See Rec. at 214-15, 269-71, 291.) Finally, although the ALJ stated perfunctorily that Dr. Diwan is an orthopedist, he did not give any consideration to the fact that Dr. Diwan is a specialist, another factor identified in the regulations. (See id. at 14.) Accordingly, the ALJ failed to give good reasons for placing zero weight on Dr. Diwan's opinion.

b. *ALJ's Consideration of Dr. Reich's Opinion*

The ALJ provided similarly insufficient reasons for his rejection of Dr. Reich's opinion. The ALJ assigned no weight to any of Dr. Reich's findings but failed to mention, let alone apply, the substance of the first and second factors: the nature of the treating relationship and the evidence in support of the opinion. (See id. at 18.)

With respect to the third factor, the ALJ performed no analysis, and supported his decision with the conclusory statement that Dr. Reich's opinion was contradicted by the findings of Dr. Diwan, Dr. Nandakumar, and the assessment of Dr. Goldman. (See id. at 18.) This general statement is incorrect. Dr. Diwan had concluded that Austin was totally disabled in light of his lumbar disc displacement, herniated disc and muscle spasms in the trapezins muscles, pain and tenderness, palpable muscle spasm, sensation, and muscle atrophy. (Id. at 334-37.) Dr.

Diwan's negative neurological findings do not obfuscate his other conclusions, which the ALJ failed to address.

The ALJ also did not discuss why he attributed more weight to the findings of Dr. Goldman, a non-treating physician who did not personally examine Austin, over the findings of Dr. Reich. (See Rec. at 17-18). And the ALJ did not address the findings of Dr. Han and Dr. Diwan that support Dr. Reich's opinion. (See id. at 214-215, 269-271, 291.) Ultimately, the ALJ inadequately applied the third factor, and did not apply any of the other factors that he must consult in determining the weight to place on a non-controlling opinion of a treating physician.

* * *

In short, the ALJ provided nothing close to "good reasons" for the lack of weight he gave to the opinions of Dr. Diwan and Dr. Reich. Halloran, 362 F.3d at 33. The ALJ's sole ground was that these doctors' opinions are contradicted by other evidence, but this alone is insufficient to justify a decision to place zero weight upon their findings. See Pogozelski, 2004 WL 1146059, at *14; see also McLean, 2012 WL 1886774, at *7; Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) ("It is not enough for the ALJ to simply say that [a treating physician's] findings are inconsistent with the rest of the record. The ALJ [must] provide[] reasons which explain that inconsistency with these other parts."). Because of the ALJ's failure to properly apply the treating physician rule, the court must remand the case for a proper evaluation of the opinions of Dr. Diwan and Dr. Reich.

C.  **Evaluation of Austin's Credibility**

Austin also argues that the ALJ failed to properly evaluate Austin's subjective accounts of his pain and symptoms. (Pl. Mem. at 9.) The ALJ's determination that Austin's allegations were inconsistent with the medical evidence (Rec. at 17) was tainted by the ALJ's failure to

17

properly evaluate the opinions of Austin's treating physician (see Part III.B, supra)—a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence. On remand, the ALJ is directed to reconsider Austin's subjective complaints in light of the renewed evaluation of the opinions of Dr. Diwan and Dr. Reich. See Sutherland, 322 F. Supp. 2d at 291 (noting that because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" the argument that the ALJ did not properly consider her complaints).

### D. Consideration of Austin's Age Under the Medical-Vocational Guidelines.

Finally, Austin argues that the ALJ failed to properly consider his age under the Medical-Vocational Guidelines. (Pl. Mem. at 10.) Austin contends that the Medical-Vocational Guidelines direct a finding of disability given his age at the time of the hearing (fifty), his lack of transferable skills, and the ALJ's residual functional capacity assessment. (Id.) He is incorrect. The Medical-Vocational Guidelines direct a finding of not disabled for individuals capable of light work who are closely approaching advanced age (fifty to fifty-four) if they have a limited education and basic English literacy. See 20 C.F.R., Part 404, Subpart P, App'x 2 § 202.00(d). Because Austin was fifty at the time of the hearing—which is within the range set forth in the Medical-Vocational Guidelines— the ALJ's determination regarding this issue was correct.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commissioner for a proper evaluation of the opinions of Dr. Diwan and Dr.

Reich and a reevaluation of Austin's subjective complaints in light of all the medical evidence.

The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 8, 2013

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge